[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11653
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20701-MGC-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEONARDO MIGUEL GARCIA MORALES,
a.k.a. El Padrino,
a.k.a. El Taliban,
a.k.a. Miguelito,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 25, 2021)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Leonardo Miguel Garcia Morales appeals his conviction and sentence for conspiracy to commit Hobbs Act robbery. He raises five arguments on appeal. First, he argues the district court constructively amended the indictment in violation of his Fifth and Sixth Amendment rights. Second, he says the district court improperly conferred with the jury about their request for a transcript when Garcia Morales was not present. Third, he argues that his sentence was procedurally defective because the district court gave him a longer sentence on account of conduct for which Garcia Morales was never convicted. Fourth, he says the district court should have granted him a continuance to allow a neurologist to testify at his sentencing. And finally, Garcia Morales says his 84-month sentence is substantively unreasonable in light of his severe medical condition.

After careful review, we find that the district court did not amend the indictment and that the district court's communications with the jury do not warrant a new trial. Therefore, we affirm Garcia Morales's conviction. However, we agree with Garcia Morales that his sentence is procedurally unreasonable because the district court erred in including an offense of which he was acquitted in its calculation of his offense level. We therefore vacate Garcia Morales's sentence and remand for further proceedings consistent with this opinion. Because we vacate Garcia Morales's sentence on this ground, we need not address the other challenges he raised to his sentence.

2

## I.

In 2012, Garcia Morales participated in a plan to rob what he believed to be a marijuana grow house. Instead, Garcia Morales was met by an armed homeowner who shot him repeatedly, leaving him a quadriplegic. Garcia Morales's co-conspirators later robbed a gold courier, but due to his severe injuries, Garcia Morales did not directly participate in that venture.

In 2017, a grand jury indicted Garcia Morales on a number of counts related to the robberies and other conduct. As relevant to this appeal, Count 1 charged conspiracy to commit Hobbs Act robberies for planning to steal from "persons employed by businesses and companies operating in interstate commerce and foreign commerce, and persons engaged in illegal interstate and foreign commerce, namely, narcotics trafficking."

The district court's jury instructions explained that Count 1 charged Garcia Morales with "two separate substantive crimes," conspiring to rob a gold courier and to rob a marijuana dealer. The district court further explained that the government was required to prove that Garcia Morales committed only one of those crimes but that the jury had to be unanimous as to "which of the two crimes" he committed.

After deliberations began, and when Garcia Morales was not present, the jury asked the district court whether it could get transcripts of witness testimony,

including Garcia Morales's testimony.  At first, the district court said it would wait for Garcia Morales to be present to address the question.  But upon learning that Garcia Morales had been returned to the facility where he was housed during the trial, the district court decided to answer the transcript question given that it "doesn't really affect any substantive matter."  The district court then informed the government and Garcia Morales's counsel that it would explain to the jurors that they could get a copy of the transcripts, but that "it is time-consuming, [and] that they should rely on their own recollection," if they could.  Garcia Morales's counsel never objected to the district court so advising the jury outside the presence of Garcia Morales.

The district court then told the jurors they should "rely on [their] recollection of the testimony," but that they could receive copies of the transcripts if they so desired.  The district court also explained that if the jurors had seen that "the lawyers had some copies of the transcripts" during closing arguments, "that's because they ordered it" before then, and it would still take some time to produce copies for the jury.  This prompted the jury to ask, "the attorneys have copies, so why can't we get them?"  The attorneys explained to the district court that neither of them had transcripts of witness testimony, only transcripts that had been received in evidence.  The district court then asked the attorneys to come stand in the doorway of the jury room and repeat that explanation to the jury, which they

4

did.  There is no record of what the attorneys said to the jury at that time, and Garcia Morales was not present for this discussion.  The jury then withdrew its request to review a transcript of Garcia Morales's testimony but still asked to review the transcript of another witness's testimony.

The jury found Garcia Morales guilty on Count 1 of conspiracy to commit the marijuana robbery, but not the gold courier robbery.  Garcia Morales's Presentence Investigation Report ("PSR") determined that because Count 1 charged "conspiracy to commit more than one offense," Sentencing Guideline § 1B1.2(d) required that the charge be treated "as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."  The PSR recommended a total offense level of 29, including one unit attributed to the gold courier robbery.

Garcia Morales objected to the computation of the offense level because "it includes points for acquitted conduct," namely the gold courier robbery.  The district court overruled that objection, finding "by a preponderance" that Garcia Morales assisted in the planning of and shared in the proceeds from the gold courier robbery.  The district court then noted that it was "probably going to depart downward for some of the categories, such as his medical condition and such, as him not being overtly involved," and suggested that "in the end it's probably going

5

to balance out." The district court sentenced Garcia Morales to 84 months' imprisonment on all counts.

Garcia Morales timely appealed.

## II.

### A.

Garcia Morales argues that the district court constructively amended the indictment when it instructed the jury that it needed to find him guilty of conspiring to commit only <u>one</u> of either the gold courier or marijuana robberies. Garcia Morales points out that Count 1 charges him with conspiring to rob "persons employed by businesses and companies operating in interstate commerce and foreign commerce, <u>and</u> persons engaged in illegal interstate and foreign commerce." And he insists that the district court was not entitled to amend the indictment to change the "and" to an "or."

We review <u>de novo</u> whether the district court constructively amended the indictment. <u>United States v. Sammour</u>, 816 F.3d 1328, 1335 (11th Cir. 2016).[1] The Fifth Amendment guarantees that a defendant can only be convicted of crimes charged in his indictment. <u>United States v. Holt</u>, 777 F.3d 1234, 1261 (11th Cir.

---

[1] The government argues that this alleged error is unreviewable because Garcia Morales invited it or, in the alternative, that it should be reviewed only for plain error because he failed to object to the instruction at the charging conference. But we need not decide which level of review applies here, because Garcia Morales's constructive amendment claim fails even when reviewed <u>de novo</u>. <u>See infra</u> pp. 6–9.

6

2015).  An indictment is constructively amended, and violates that right, when "the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what [was] contained in the indictment." Id. (quotation marks omitted).  But there is a difference between the elements and the objects of a crime.  It is well-settled that "where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may properly be framed in the disjunctive."  United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000).

Here, it is clear that Count 1 charged a single, multi-object conspiracy.  The elements of conspiracy to commit Hobbs Act robbery are: (1) there was an agreement between two or more people, including the defendant, to commit a Hobbs Act robbery; (2) the defendant knew about the conspiratorial goal; and (3) the defendant voluntarily participated in furthering that goal.  Brown v. United States, 942 F.3d 1069, 1075 (11th Cir. 2019) (per curiam).  Garcia Morales was charged with violating the Hobbs Act by conspiring to steal from legal and illegal enterprises.  In other words, Garcia Morales was charged with participating in a single conspiracy that had more than one goal, including the marijuana robbery and the gold courier robbery.  This means the government needed to prove that he was aware of and participated in furthering at least one of those goals, but not

7

necessarily both.  See Simpson, 228 F.3d at 1300.  The district court properly instructed the jury about how to evaluate the evidence as to whether Garcia Morales participated in a single, multi-object conspiracy.

Garcia Morales first argues that the district court improperly instructed the jury as if he had been charged with multiple conspiracies when he was charged with a single conspiracy.  But no one disputes that Count 1 charged Garcia Morales with a single conspiracy.  Garcia Morales's repeated insistence that Count 1 "clearly charges a single conspiracy" does not help him in the face of a charge for a single conspiracy with multiple objects.

Garcia Morales places great weight on the fact that the government did not charge him for robbing the gold courier or aiding and abetting in that robbery.  He says it is reasonable to infer from that decision that "the grand jury did not charge [him] in Count 1 as a co-conspirator in the gold courier robbery as a stand-alone conspiracy."  But it is not uncommon for a defendant to be charged with conspiracy to commit a crime without being charged with the substantive offense. See Ocasio v. United States, 578 U.S. __, 136 S. Ct. 1423, 1430 (2016) ("[A] conspirator may be convicted even though he was incapable of committing the substantive offense himself." (quotation marks omitted)).  And again, Garcia Morales was not charged with conspiring to commit the gold courier robbery as a

8

stand-alone conspiracy.  He was charged with participating in a single, over-arching conspiracy with two objects.

Garcia Morales also points to the fact that there was insufficient evidence of his knowledge and planning of the gold courier robbery.  But this merely explains the jury's verdict regarding that object of the conspiracy.  It does not tell us that the grand jury intended to charge him with participating in both, and necessarily both, goals of that single conspiracy.  Indeed, the fact that there was considerably more evidence about Garcia Morales's participation in one object of the conspiracy than the other suggests quite the opposite.

Garcia Morales was charged with a single, multi-object conspiracy.  The district court was therefore correct in instructing the jury that the government needed to prove Garcia Morales participated in only one object of the conspiracy.  It did not constructively amend the indictment by doing so.

B.

Garcia Morales next argues that the district court improperly excluded him from a critical stage of the trial when it discussed the jury's request for trial transcripts without him present and answered one of the jury's questions off the record.  He argues that this violated his Fifth and Sixth Amendment Rights, Federal Rule of Criminal Procedure 43, and the Court Reporters Act ("CRA").  He points out that after the off-the-record discussion, the jury withdrew their request

for a transcript of his testimony, and says that neither he nor his counsel ever consented to the district court's decision to have these discussions without Garcia Morales present.

As an initial matter, because Garcia Morales raised this claim for the first time on appeal, we review the constitutionality of the district court's actions for plain error. United States v. Mosquera, 886 F.3d 1032, 1043 (11th Cir. 2018). To succeed on plain error review, a defendant must show "error that is plain; that affects substantial rights; and that seriously affects the fairness, integrity, or public reputation of judicial proceedings." Holt, 777 F.3d at 1261 (quotation marks omitted).

A criminal defendant has the "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987). But this Court has held that a district court did not violate a defendant's right to be present at every stage of the trial when the court, absent the defendant and his counsel, responded to a jury's request for a transcript by noting that transcripts were not usually prepared during a trial and that the jury should follow its recollection of the evidence. United States v. Zielie, 734 F.2d 1447, 1460 (11th Cir. 1984), abrogated in part on other grounds by Bourjaily v. United States, 483 U.S. 171, 107 S. Ct. 2775 (1987), as recognized in United States v.

10

Chestang, 849 F.2d 528 (11th Cir. 1988). In Zielie, this Court held that the defendant showed no prejudice as a result of the district court's "purely ministerial" act. Id. In so ruling, we held that "when the judge's answer to the jury's inquiry is distinctly responsive to the question; clearly states the law; and no prejudice is shown," any alleged error is harmless. Id.

So too here. Even if Garcia Morales should have been present for the district court's response to the jury's inquiry, he has not shown how this affected his substantial rights. He has not explained what objection he would have lodged or how his presence, in addition to that of his counsel (who was present throughout this interaction) would have changed anything. Garcia Morales suggests that the district court somehow convinced the jury to withdraw its request for a transcript of his testimony. But the district court never denied the jury access to any transcript and there is no reason to think that Garcia Morales's presence would have convinced the jury they needed it.[2]

Garcia Morales also claims that the district court violated the CRA when the court responded, outside the deliberation room and off the record, to the jury's question about why the jurors could not have transcripts if the attorneys had them.

---

[2] As we review the alleged violation of Federal Rule of Criminal Procedure 43 for harmlessness, the same analysis applies. That rule requires that the defendant be present at "every trial stage, including jury impanelment and the return of the verdict." Fed. R. Crim. P. 43(a)(2). To the extent the district court's actions here technically violated the rule, Garcia Morales has failed to show how he was harmed by the violation.

11

The CRA requires a reporter to record verbatim all proceedings held in open court in criminal cases.  See United States v. Cashwell, 950 F.2d 699, 703 (11th Cir. 1992) (quoting 28 U.S.C. § 753(b)).  But not every "failure to record, however small or insignificant, will work a reversal." United States v. Selva, 559 F.2d 1303, 1306 n.5 (5th Cir. 1977).[3]  Typically, reversal is warranted in cases with "substantial or significant omissions," such as when the record is missing voir dire, opening statements, government or defense closing argument, or the entire transcript.  See id.

Here, there was no substantial or significant omission from the record.  The interaction with the jury was very brief, was in the presence of Garcia Morales's trial counsel, the district court and counsel gave accurate information in response to the jury's question, and the court first put into the record what it was going to have the attorneys tell the jury.  See United States v. Stefan, 784 F.2d 1093, 1102 (11th Cir. 1986) (holding that the omission of a one hour and forty-five minute bench conference, in such a "long and complex case," was not a substantial or significant omission).  And as we review this claim for harmlessness, see United States v. Sweat, 555 F.3d 1364, 1367 (11th Cir. 2009) (per curiam), Garcia

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.  Id. at 1209.

Morales has again failed to show how he was harmed by any technical violation of the CRA.

## C.

Finally, Garcia Morales argues that his sentence is procedurally unreasonable because his offense level calculation improperly included the gold courier robbery.  The government concedes that the district court erred in calculating Garcia Morales's offense level by treating the gold courier robbery as a separate group under Guideline § 1B1.2(d).  Nevertheless, the government insists that any error was harmless because the district court stated that it was departing downward one level due to Garcia Morales's limited role in the gold courier robbery.

We agree with the government's concession that the district court erred in treating the gold courier robbery as a separate group under United States Sentencing Guideline § 1B1.2(d).  That Guideline states that a "conviction on a count charging conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."  USSG § 1B1.2(d).  The commentary clarifies that the conviction itself has to establish that the defendant committed each relevant offense.  USSG § 1B1.2(d) cmt. n.3.  Here, the jury acquitted Garcia Morales of conspiring to commit the gold courier robbery.  Thus

13

the district court was not entitled to treat the gold courier robbery as a separate offense under this guideline.

We conclude this error was not harmless. "An error in the district court's calculation of the Sentencing Guidelines range warrants vacating the sentence, unless the error is harmless." United States v. Barner, 572 F.3d 1239, 1247 (11th Cir. 2009). An error is harmless only where "a district judge clearly states that he would impose the same sentence, even if he erred in calculating the guidelines." Id. at 1248 (emphasis added). The fact that the district court varied downward from the guidelines range is not sufficient to demonstrate harmless error. See United States v. Eason, 953 F.3d 1184, 1195 n.8 (11th Cir. 2020) (finding that a Guidelines calculation error was not harmless where the district court never "stated on the record that the enhancement made no difference to the sentence it imposed." (quotation marks omitted) (alterations adopted)).

Here, the district court's statements were not clear enough to assure us that it would have imposed the same sentence regardless of its calculation error. The district court stated that it would "probably" depart downward due to a combination of Garcia Morales's medical condition and "him not being overtly involved." These equivocal statements, suggesting that both Garcia Morales's medical condition as well as his limited role in the gold courier robbery contributed to the downward departure, provide only the weakest of assurance that the error

14

was harmless.  Because the district court erred in calculating Garcia Morales's Guidelines range and never clearly stated that it would impose the same sentence regardless of that error, we conclude that his sentence is procedurally unreasonable.  See Barner, 572 F.3d at 1248.

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.